7TH JUDICIAL DISTRICT COURT
SIERRA COUNTY NM
FILED IN MY OFFICE
9/2/2016 8:55:10 AM
MARY MORA
DISTRICT COURT CLERK
/s/ Lindsey Huston    9/2/2016

STATE OF NEW MEXICO
COUNTY OF SIERRA
SEVENTH JUDICIAL DISTRICT COURT

WILLIAM WALKER, M.D.,

    Plaintiff,

v.                                                      No. D-721-CV-2016-00074

EMERGENCY STAFFING SOLUTIONS, INC.,
a Texas corporation,

    Defendant.

### COMPLAINT FOR BREACH OF CONTRACT, VIOLATION OF THE UNFAIR TRADE PRACTICES ACT, QUANTUM MERUIT, AND UNJUST ENRICHMENT

1. Plaintiff, William Walker, M.D. ("Dr. Walker"), is a resident of WILMINGTON DE. At all relevant times, he worked in Sierra County, New Mexico.

2. Defendant, Emergency Staffing Solutions, Inc. ("ESS"), is a Texas corporation with its principal place of business in Dallas, TX, and authorized to conduct business in New Mexico. At all relevant times, ESS did business in Sierra County, New Mexico.

3. At the time of the damages alleged in this Complaint, Dr. Walker worked as an independent contractor for ESS in Sierra County, New Mexico.

4. This Court has jurisdiction over the parties and the subject matter of this suit.

### General Allegations

5. Dr. Walker, a retired major in the United States Air Force Reserve, was a flight surgeon.

6. Since his service, Dr. Walker has practiced as an emergency department physician.

7. ESS is in the business of contracting with medical institutions to service the emergency medical care facilities of such institutions.

8. ESS provides emergency medical care by contracting with individual physicians as independent contractors to make their professional services available.

9. In July, 2014, ESS and Dr. Walker entered into a Physician Agreement (the "Contract") under which Dr. Walker would provide his professional services to institutions with which ESS contracted to provide emergency medical care. A copy of the Contract is attached as **Exhibit 1**.

10. In December, 2015, and January, 2016, Dr. Walker provided his professional services as an Emergency Department Physician/Hospitalist at Sierra Vista Hospital in Truth or Consequences, New Mexico (the "Hospital").

11. The normal procedure for providing his professional services was as follows: When Dr. Walker, who lives out of state, was scheduled to work, ESS would make his flight arrangements. Dr. Walker would just arrive at the designated airport, and his flight reservation would be booked.

12. Dr. Walker was scheduled to work shifts at the Hospital on December 24th and 25th, 2015. On December 9, 2015, Dr. Walker requested by e-mail for ESS to reserve a flight for him on Jet Blue Airline from JFK to Albuquerque. Dr. Walker did not receive a reply or confirmation, but this was normal for ESS not to respond or confirm.

13. On December 23, 2015, Dr. Walker texted ESS to confirm his flight reservations. An ESS representative texted Dr. Walker back about an hour later with reservations out of BWI. This flight was booked the same day as his departure, rather than on December 9th, when Dr. Walker requested ESS make the reservation.

14. When Dr. Walker arrived at the airport (at 6:00 pm for his 9:00 pm flight), he was told the flight was fully booked and checked in, and when no passengers volunteered for a later flight, Dr. Walker was bumped from his flight.

15. Dr. Walker notified ESS that he was bumped from his flight, and the ESS representative told him that she would look for other flights. She did not get back to him that night. There were no more flights going out. Consequently, ESS's failure to secure reservations caused Dr. Walker to miss his shift on December 24, 2015.

16. On December 25, 2015, ESS called Dr. Walker and told him that ESS was desperate to get a physician to T or C. Dr. Walker agreed to take a flight out of PHL that the ESS representative told him she had booked for him.

17. While Dr. Walker was enroute to PHL, he received a call from American Airlines notifying him that the credit card used to purchase his flight had been declined. Dr. Walker immediately contacted ESS with this information. The ESS representative told Dr. Walker she would rebook the flight with a different card.

18. When Dr. Walker tried to check in at the airport, the booking agent told Dr. Walker that his flight was not paid for and that there was insufficient time to rebook the flight. Again, ESS's failure to arrange Dr. Walker's travel caused him to miss another shift.

19. ESS's failure to arrange for Dr. Walker's flight resulted in Dr. Walker losing $9000.00 for services that he was scheduled, and that he expected, to perform in December.

21. Dr. Walker was next scheduled to work 48 hours on January 14 to 15, 2016. ESS asked him to extend his schedule to work 36 hours on January 18 to 19, 2016, take a 12 hour break, and then work 24 hours on January 20, 2016. Dr. Walker agreed to the extension, with 24 hours of holiday pay for the January 18th holiday.

22. Dr. Walker was not scheduled to work on January 21, 2016, and he had worked sixty of the 72 hours prior to January 21st. Nevertheless, ESS asked him to work another shift on January 21, 2016.

23. Dr. Walker was physically impaired from his lack of sleep over the prior three days. His lack of sleep could well have prevented him from performing with the degree of skill and expertise that was required under the Contract. The Hospital's Chief of Staff agreed with Dr. Walker's assessment regarding his sleep deprivation caused impairment. Dr. Walker could not fill in to work the January 21st shift for someone who did not show up.

24. Dr. Walker wanted to, and was ready and offered to, work the remaining shifts for which he was scheduled after January 21, 2016, but ESS told him that it was terminating the Contract. ESS did not give Dr. Walker ninety (90) days notice as required by the Contract.

25. ESS's wrongful termination of the Contract resulted in Dr. Walker losing $7000.00 for services he was scheduled, willing and able to perform in January, 2015.

26. When Dr. Walker returned to his home, he received by mail two checks (one for $18,725.00 and one for $1,075.00, which was the payment due to him for his services provided in December, 2015. Copies of the checks are attached hereto as **Exhibit 2**.

27. When Dr. Walker tried to deposit the checks into his own account, he discovered that ESS had stopped payment on the checks.

28. Not only did ESS stop payment for Dr. Walker's services in December, 2015, but it refused to pay for the services he performed in January, 2106. The total amount owed for Dr. Walker's services is $35,800. ESS claimed that Dr. Walker's failure to sign and/or initial paper work entitled it to withhold all of Dr. Walker's payment.

29. In February, 2016, ESS sent to Dr. Walker a stack of paper work that that he

4

needed to sign. Dr. Walker signed all of the paper work and returned it to ESS. Still, ESS refused to pay Dr. Walker for his services.

30. In February, 2016, ESS sent to Dr. Walker more paper work and requested his signature or initials on it. This time, Dr. Walker told ESS that he would sign the paper work and any other paper work that ESS later discovered needed signatures or initials, but he first wanted assurances that ESS would pay for his services according to the Contract. ESS refused to give such assurances.

31. On or about February 21, 2016, Dr. Walker signed and/or initialed all paper work he received from ESS and returned it to ESS.

32. ESS continues falsely to represent that Dr. Walker has failed to complete paper work and that it is entitled to withhold all of Dr. Walker's pay.

## COUNT I
### (Breach of Contract)

33. Dr. Walker Realleges Paragraphs 1 through 32.

34. The Contract is a valid contract.

35. Dr. Walker performed all of his obligations under the Contract or is excused from doing so.

36. ESS breached the Contract by:

(a) Causing Dr. Walker to miss shifts in December, 2015;

(b) Demanding that Dr. Walker work a shift when he could not exercise the degree of skill and expertise required by the Contract;

(c) Terminating the Contract without ninety (90) days notice; and

(d) Refusing to pay Dr. Walker for services rendered.

37. Dr. Walker suffered damages as a result of ESS's breaches of the Contract.

38. ESS's conduct was malicious, reckless, wanton, oppressive, or fraudulent.

## COUUNT II
(Violation of the Unfair Trade Practices Act)

39. Dr. Walker realleges Paragraphs 1 through 37.

40. In the regular course of its trade or commerce, ESS knowingly made false or misleading representations to Dr. Walker in connection with the sale or lease of services that tended to and/or did deceive Dr. Walker, including but not limited to:

(a) stating that a transaction involves rights remedies or obligations that it does not involve; and

(b) stating that services, replacements or repairs are needed if they are not needed.

41. ESS's conduct constitutes a violation of the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-2(D).

42. ESS's conduct was willful, reckless, wanton, fraudulent, and/or in bad faith.

43. Dr. Walker has suffered damages as a result of ESS's violation of the Unfair Trade Practices Act.

44. Dr. Walker is entitled to recover treble damages as well as reasonable costs and attorneys' fees.

## COUNT III
(Quantum Meruit)

45. Dr. Walker realleges Paragraphs 1 through 44.

46. At ESS's request, and with ESS's knowledge and approval, Dr. Walker conferred a benefit on Defendant.

47. Dr. Walker had a reasonable expectation of being compensated for his services.

48. If ESS is allowed to retain the benefits without compensating Dr. Walker, ESS will be unjustly enriched.

COUNT IV
(Unjust Enrichment)

49. Sr. Walker realleges paragraphs 1 through 48.

50. ESS knowingly benefitted from Dr. Walker's services at Dr. Walker's expense.

51. Dr. Walker is entitled to payment for the services he provided.

52. It would be unjust to allow ESS to retain the benefits of Dr. Walker's services without paying him for them.

53. ESS's conduct was willful, reckless, wanton, fraudulent, and/or in bad faith.

WHEREFORE, Dr. Walker requests that this Court enter judgment in his favor and against ESS in the amount of $155,400, plus punitive damages, attorneys' fees and costs, pre- and post-judgment interest at the maximum rate allowable by law, and such other and further relief the Court deems just and proper.

BUSINESS LAW SOUTHWEST LLC

*Electronically Filed*
*/s/ Timothy R. Mortimer*
_____
Timothy R. Mortimer
320 Gold Ave. SW, Suite 610
Albuquerque, NM 87102
(505) 848-8581
Fax: (505) 848-8593
timothy@businesslawsw.com (e-mail)

Physician Agreement

This agreement made and entered into this 11 day of July, 2014 by and between Emergency Staffing Solutions, Inc. (hereinafter called "Corporation"), and William Ware, MD (hereinafter called "Physician").

WITNESSETH:

WHEREAS, Corporation engages in the business of contracting with medical institutions to service the emergency medical care facilities of such medical institutions;

WHEREAS, Corporation provides said staff and service by contracting with individual physicians, as INDEPENDENT CONTRACTORS, who will agree to make their professional services available at such times as may be determined by said corporation.

WHEREAS, Physician is a licensed physician authorized to practice medicine in the State of New Mexico.

WHEREAS, Physician is desirous of contracting his services, as an INDEPENDENT CONTRACTOR, to the Corporation and the Corporation is desirous of contracting with Physician pursuant to the terms and conditions hereinafter set forth.

NOW THEREFORE, for and in consideration of the mutual covenants, promises, and payments as hereinafter set forth, Corporation and Physician agree as follows:

1. The period of this Agreement shall be for one (1) year from the date hereof, automatically renewable for a like period upon each expiration thereof provided, however, that the Corporation or Physician may terminate this Agreement at any time upon ninety (90) days written notice mailed to the last known address of the terminated party. However, if the contract of the Corporation with the contracted hospital wherein physician is providing most of his service is terminated for any reason whatsoever or if the Corporation is notified either orally or in writing by an administrative employee of or by a licensed physician of a medical facility in which the physician is providing medical services pursuant to this Agreement, that the services of the physician are unsatisfactory to the hospital, this Agreement may be terminated forthwith, without the necessity of ninety (90) days written notice by the Corporation mailing a notice to the terminated physician advising the physician of the immediate termination.

※ WJW
Physician Initials



EXHIBIT
1

Physician warrants and represents that he is licensed to practice
medicine in any and all states in which he chooses to work, that he
is experienced and competent in the operation and use of emergency
medical care facilities and procedures, and that he is qualified to
render the professional services required of a physician.

2. Physician agrees to perform professional medical services in the
emergency care facilities of medical institutions that Corporation may
contract with to provide said services at such times and at such
places as may be scheduled by the Corporation pursuant to this
Agreement, and Corporation agrees to pay physician the sum of
$_____ for each hour of said services. If Physician at any time
for any reason fails to work a shift for which he is scheduled and
Corporation is required to incur costs and expenses in excess of the
hourly compensation that Physician would have been paid for such shift
in order to ensure coverage of such shift by a qualified replacement
physician, Corporation shall have the right to offset and deduct such
excess cost from Physician's future compensation. Notwithstanding
anything herein to the contrary, if Physician at any time and for any
reason fails to complete the necessary paperwork in connection with
the services rendered hereunder, including, without limitation,
patient medical charts, linkage paperwork for Medicare, Medicaid, and
all other insurers, and related documentation, Corporation shall have
the right to deduct the amount equal to unbilled patient charges from
Physician's compensation. If paperwork is completed in a timely
manner, Corporation shall release funds withheld immediately.

*[handwritten margin notes: "Hourly hiring incentives", "To C. hrs/hr + incentives"]*

3. The performance of services pursuant to Paragraph 3 hereof shall be
subject to the following terms and conditions:

   a. Corporation shall have no right to control and shall not control
   the manner in which Physician performs his required services.
   b. Physician shall pay any and all costs and expenses that may
   result from in any manner whatsoever, the performance of such
   services.
   c. Physician shall abide by all established rules, regulations and
   procedures established by the medical institution wherein
   Physician is performing such services.
   d. Physician shall comply with all applicable provisions of federal,
   state, local, or other laws while performing such services.
   e. Physician shall at all times perform such service in accordance
   with that degree of skill and expertise that qualified and
   licensed physicians in that community would exercise in the same
   or similar circumstances.
   f. Corporation shall not provide any training, instructions or any
   other directions of any kind whatsoever as to the manner in which
   Physician is to perform such services.
   g. Physician shall provide all equipment, facilities, assistants and
   any other necessary items in connection with the performance of
   such services except that normally provided by the hospital.

4. Physician agrees to indemnify and hold Corporation harmless from any
and all loss, expense, claim, lawsuit, cost, damage or liability of

Physician Initials _WJW_                                              2

whatever nature arising out of the performance of service pursuant to Paragraph 3 hereof by Physician, whether arising out of or related to Physician's performance or failure to perform such services, Physician's failure to abide by other recognized duties inherent in the practice of medicine or Physician's conduct that is otherwise negligent, intentional or otherwise recognized by law to show fault in failing to abide by a recognized standard of care. Physician further agrees to defend Corporation, at his own expense, in any lawsuit or claim, which arises out of or is related to Physician's performance of services pursuant to this agreement.

5. This Agreement is not assignable by Physician without the written consent of Corporation.

6. It is agreed that intended by the parties hereto that Physician is an INDEPENDENT CONTRACTOR and not an employee, agent, or servant of Corporation.

7. Physician shall be able to perform other medical and professional services for whomsoever Physician desires and Corporation warrants that it will not interfere in such activity of Physician; provided, however, that Physician, during the terms of this business association, shall not seek employment from, offer medical or professional services to, or solicit in any manner whatsoever any medical institution which Corporation has contracted with to supply emergency medical care services, for the purpose of performing medical or professional services in connection with the emergency medical care facilities of any such medical institution.

8. It is expressly agreed between Corporation and Physician that a solicitation to perform emergency medical care services by Physician or the performance of any such services for any medical institution which Corporation has at any time contracted with to provide emergency medical care services will cause irreparable harm to Corporation due to the limited number of medical institutions seeking such services. Therefore, it is hereby agreed that for a period of two (2) years after termination of this Agreement, howsoever the same may be terminated, Physician shall not directly or indirectly solicit a contract to perform, nor perform, nor have any ownership of financial interest in any corporation, partnership, or other business entity soliciting or contracting to perform emergency medical services for any medical institution at which Physician has performed the same or similar services under this Agreement or any prior Agreement between Physician and Corporation. It is hereby stipulated between Physician and Corporation that the period of time of two (2) years with respect to solicitation or rendering of services to a former medical institution customer is reasonable because it is anticipated that during said two year period after the termination of the Agreement, the limited restriction provided by Paragraph 9 and 10 herein shall expire.

9. Physician acknowledges that his contract with any given medical institution pursuant to the terms of this Agreement will result in a

 Physician Initials WJV

3

personal relationship being established between him and the administration of said medical institution and place him in a position wherein he can influence the future actions of said medical institution and Physician further acknowledges that he has been placed in this position through the efforts of and at the expense of the Corporation. Furthermore, it is agreed that the Physician's contract with the medical institution will result in the Physician acquiring confidential information concerning the method of operation and administration related to said medical institutions, including but not limited to fee schedules, formulas and special customer requirements which constitute trade secrets in connection with the Corporation's business operation. Said confidential information is the property of Corporation and the acquisition of the same would create an unfair advantage in the event he, the Physician, were to attempt to solicit or to provide services of a similar nature to a medical institution customer of the Corporation. Therefore, in addition to any and all remedies available to Corporation under any and all other agreements, and under this Agreement, Physician agrees that he will immediately pay the sum of $50,000.00 to Corporation as and for liquidated damages if within twenty-four months following the services for said institution pursuant to contract with the Corporation. Physician acknowledges that the aforementioned liquidated damages to not adequately compensate the Corporation for its damages in the event of a violation of section 9 and 10 of this Agreement and notwithstanding said liquidated damages; Physician acknowledges the Corporation may seek injunctive relief for violation of said sections.

10. Whenever the word "Physician" shall appear in the Agreement said word shall mean not only the physician executing this Agreement but also any Corporation and the employees, officers, directors, or shareholders thereof formed by Physician to provide services to be rendered hereunder of services similar to those provided by this Agreement. Physician further agrees to cause all employees officers, directors, or shareholders of a Corporation so formed to execute a copy of this Agreement and in so doing each of them shall agree to be personally bound by all the terms hereof and in particular the provisions of Paragraphs 9, 10, and 11 hereinabove set out. Corporation shall have the right to offset and apply any monies due Physician under this contract against the aforesaid liquidated Damages upon Physician's breach of the terms of this paragraph.

11. Corporation shall provide malpractice insurance at no cost to Physician. When the malpractice policy expires, is not renewed, or is terminated, Corporation shall pay for tail coverage for Physician.

12. Assignment: The Corporation may assign this Agreement without notice to a subsidiary of the Corporation or to any other corporation, partnership, or entity affiliated with the Corporation.

13. Only a written instrument by both Corporation and Physician may amend this Agreement.

Physician Initials _____

4

14. Each and every provision, section, subsection, paragraph, subparagraph, and clause shall be separable from each and every other part hereof so that invalidity of any part hereof shall not affect the validity of the remainder.

IN TESTIMONY HEREOF, the parties hereto have set in their hand, in duplicate originals to the date hereinabove first mentioned.

Emergency Staffing Solutions, Inc.

_____

17304 Preston Road, Suite 1400
Dallas, TX 75252

Physician

_____
Signature

William Walker, MD
Printed Name

Physician Initials _____

Highlighted - sent to walker on 02/08/2016

| | Account No. | DOS | Info Needed | Info Needed | Info Needed |
|---|---|---|---|---|---|
| ESS 880 | 260995 | 10/24/2015 | sign ERP record | | |
| ESS 880 | 260996 | 10/24/2015 | sign ERP record | | |
| ESS 880 | 261551 | 11/3/2015 | complete exam | | |
| ESS 880 | 263370 | 12/2/2015 | complete exam | | |
| Hospital | 257767 | 9/3/2015 | sign PN | | |
| Hospital | 257983 | 9/8/2015 | sign PN | | |
| Hospital | 257983 | 9/8/2015 | sign PN | | |
| Hospital | 257983 | 9/8/2015 | sign PN | | |
| Hospital | 257983 | 9/8/2015 | sign PN | | |
| Hospital | 257983 | 9/8/2015 | sign PN | | |
| Hospital | 257983 | 9/8/2015 | sign PN | | |
| Hospital | 258154 | 9/14/2015 | sign orders | | |
| Hospital | 258200 | 9/9/2015 | sign H & P | | |
| Hospital | 258642 | 9/15/2015 | sign orders | | |
| Hospital | 259720 | 10/21/2015 | sign PN | | |
| Hospital | 260194 | 10/17/2015 | sign orders | | |
| Hospital | 260983 | 10/25/2015 | sign PN | | |
| Hospital | 261007 | 10/24/2015 | sign orders | | |
| Hospital | 261093 | 10/26/2015 | sign orders | | |
| Hospital | 261431 | 11/1/2015 | sign orders | | |
| Hospital | 261437 | 11/3/2015 | sign EKG - 3 | | |
| Hospital | 261456 | 11/2/2015 | sign H & P | | |
| Hospital | 261683 | 11/4/2016 | sign orders | | |
| Hospital | 261819 | 11/7/2015 | sign DCS | | |
| Hospital | 262034 | 11/11/2015 | sign orders | | |
| Hospital | 262096 | 11/12/2015 | sign orders | | |
| Hospital | 262098 | 11/11/2015 | sign orders | complete DCS | |
| Hospital | 262554 | 11/25/2015 | sign orders | | |
| Hospital | 262559 | 11/21/2015 | sign orders | | |
| Hospital | 262699 | 11/12/2015 | sign PN | | |
| Hospital | 262979 | 12/1/2015 | sign orders | | |
| Hospital | 263040 | 11/27/2015 | sign orders | | |
| Hospital | 263209 | 11/30/2015 | sign orders | | |
| Hospital | 263297 | 12/1/2015 | sign EKG - 2 | | |
| Hospital | 263323 | 12/2/2015 | sign orders | | |
| Hospital | 263754 | 12/8/2015 | sign PN | | |
| Hospital | 263760 | 12/15/2015 | sign orders | | |
| Hospital | 263886 | 12/10/2015 | sign orders | sign EKG | complete DCS |
| Hospital | 263886 | 12/10/2015 | sign DCS | | |
| Hospital | 263942 | 12/11/2015 | sign orders | | |
| Hospital | 263952 | 12/11/2015 | complete orders | sign EKG | |
| Hospital | 265697 | 1/12/2016 | sign orders | | |
| Hospital | 265744 | 1/14/2016 | length of stay | complete DCS | |
| Hospital | 265750 | 1/13/2016 | sign orders | sign EKG - 2 | need DCS |
| Hospital | 265785 | 1/13/2016 | sign orders | | |
| Hospital | 265809 | 1/13/2016 | sign orders | | |
| Hospital | 265810 | 1/13/2016 | sign orders | | |
| Hospital | 265828 | 1/4/2016 | sign orders | complete H & P | |
| Hospital | 265847 | 1/14/2016 | sign EKG | | |
| Hospital | 265872 | 1/14/2016 | sign EKG | | |
| Hospital | 265979 | 1/15/2016 | sign orders | | |
| Hospital | 266050 | 1/18/2016 | sign orders | sign EKG | |
| Hospital | 266050 | 1/18/2016 | sign PN | | |
| Hospital | 266074 | 1/18/2016 | sign orders | sign EKG | |
| Hospital | 266115 | 1/18/2016 | sign orders | | |
| Hospital | 266116 | 1/18/2016 | sign orders | | |
| Hospital | 266125 | 1/19/2016 | sign orders | | |
| Hospital | 266180 | 1/19/2016 | sign EKG | | |
| Hospital | 266194 | 1/19/2016 | sign EKG - 3 | | |
| Hospital | 266180 | 1/19/2016 | sign orders | | |
| Hospital | 258574 | 9/15/2015 | complete H & P | | |
| Hospital | 261601 | 11/3/2015 | complete H & P | | |
| Hospital | 258207 | 9/9/2015 | complete H & P | | |

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

84F　　　　　　　　　　　　　　　　　32-96/1119

EMERGENCY STAFFING SOLUTIONS　　　　Payroll check number: 0000069953
17304 PRESTON RD. SUITE 1400
DALLAS, TX 75252　　　　　　　　　　　Pay date: 01/20/2016
COMPANY PH #:972 934 3200

Pay to the order of: **WILLIAM J WALKER**

This amount: EIGHTEEN THOUSAND SEVEN HUNDRED TWENTY FIVE AND 00/100 DOLLARS　　　$18725.00

*Stop payment*

NORTH DALLAS BANK
& TRUST CO. P.P. BOX 679001
DALLAS, TX 75367-9978

⑈000069953⑈ ⑆111000960⑆ 11 0554 3⑈

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.　　HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

EXHIBIT
2

VERIFY DOCUMENT AUTHENTICITY: COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

MRE
32-96/1110

**ESS HOSPTALIST LLC**
17304 PRESTON RD. SUITE 1400
DALLAS, TX 75252
COMPANY PH #:972 934 3200

Payroll check number: 0000070018
Pay date: 01/20/2016

Pay to the order of: **WILLIAM J WALKER**

This amount: ONE THOUSAND SEVENTY FIVE AND 00/100 DOLLARS         $1075.00

STOP PAYMENT

NORTH DALLAS BANK
& TRUST CO. P.P. BOX 679001
DALLAS, TX 75367-9878

⑈0000070018⑈ ⑆111000960⑇ 11 0554 3⑈

THE ORIGINAL DOCUMENT HAS... HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

⑆111000960⑇       110554 3⑈       ⑈0000107500⑈