IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM WALKER,

     **Plaintiff,**

v.                                            **No. 16-cv-1103 SMV/GBW**

EMERGENCY STAFFING
SOLUTIONS, INC.,

     **Defendant.**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant's Motion to Dismiss [Doc. 5], filed October 11, 2016.  Plaintiff responded on October 25, 2016.  [Doc. 10].  Defendant did not reply, and the time for doing so has elapsed.  The Court heard oral argument on the motion on January 12, 2017.  [Doc. 15].  Having considered the record, briefing, oral argument, and relevant law, and being otherwise fully advised in the premises, Defendant's motion will be GRANTED IN PART and DENIED IN PART.  The motion will be GRANTED as to Plaintiff's claims based on quantum meruit, unjust enrichment, and violation of the New Mexico Unfair Trade Practices Act.  The motion will be DENIED as to Plaintiff's claim for breach of contract.

### Background

Plaintiff is a physician.  [Doc. 1-1] at 1.  Defendant provides medical staffing to hospitals.  *Id.* at 2.  In July 2014, the parties entered into a contract under which Plaintiff agreed to provide his services as a physician to Defendant's clients.  *Id.*  The claims in this case stem

from Plaintiff's provision of services at Sierra Vista Hospital in Truth or Consequences, New Mexico, in December 2015 and January 2016. *Id.* Plaintiff resides in Delaware. *Id.* at 1.

Plaintiff first alleges that Defendant failed to secure his flight reservations, thereby causing him to miss scheduled shifts at the hospital on December 24 and 25, 2015. *Id.* at 2–3. He states that Defendant customarily made his travel arrangements in advance of his scheduled shifts. *Id.* at 2. He alleges that, in this instance, Defendant failed to book his flight reservation until the day he was scheduled to leave; consequently, he was bumped from his flight. *Id.* at 3. He further claims that Defendant told him it would rebook his flight, but when he arrived at the airport his ticket had not been paid for and he was unable to secure a flight. *Id.*

Plaintiff next alleges that in January 2016, Defendant terminated his contract wrongfully and without the required notice. *Id.* at 3–4. He claims that Defendant asked him to perform an additional shift on January 21, 2016, although he had worked 60 of the previous 72 hours. *Id.* at 4. Plaintiff states he was unable to work the shift because he was physically impaired from lack of sleep. *Id.* He alleges that he was scheduled to work subsequent shifts in January 2016. *Id.* However, Defendant abruptly terminated his contract. *Id.* He alleges that Defendant failed to provide the 90-day notice required by the contract. *Id.*

Finally, Plaintiff alleges that Defendant has failed to pay him for work he performed in December 2015 and January 2016. *Id.* at 4–5. He states that Defendant stopped payment on two checks he received for work he completed in December 2015 and refused to pay him for work he completed in January 2016. *Id.* at 4, 14–15. He alleges that Defendant told him it would withhold all pay until he finished his paperwork. *Id.* at 4. He states that Defendant sent him

paperwork in February 2016, which he completed and returned, but Defendant still refused to pay him. *Id.* at 4–5. He alleges that Defendant sent him additional paperwork later that month. *Id.* at 5. Plaintiff initially refused to complete the paperwork until Defendant assured him it would pay him for his services, but Defendant declined to make any such assurance. *Id.* Subsequently, Plaintiff alleges, he completed all the additional paperwork and returned it to Defendant on or around February 21, 2016. *Id.* He alleges that Defendant continues to withhold payment and falsely claims that Plaintiff has outstanding paperwork to complete. *Id.*

Plaintiff filed this action in state court on September 2, 2016, alleging breach of contract, quantum meruit, unjust enrichment, and violation of the New Mexico Unfair Trade Practices Act ("UPA"). *Id.* at 5–7. Defendant removed the action to this Court on October 5, 2016. [Doc. 1]. Plaintiff seeks $155,400 in compensatory damages, plus punitive damages, attorney's fees, costs, and interest. [Doc. 1-1] at 7.

Defendant has filed a motion to dismiss. [Doc. 5]. Defendant asserts that Plaintiff has failed to satisfy the heightened pleading standard required for special damages, and it requests that the Court dismiss Plaintiff's claims for punitive damages or, in the alternative, order Plaintiff to amend his Complaint. *Id.* at 3–4. Defendant next asserts that Plaintiff has failed to satisfy the heightened pleading standard required for allegations of fraud, and it requests that the Court dismiss all of Plaintiff's claims premised on allegations of fraud or, in the alternative, order Plaintiff to amend his Complaint. *Id.* at 4–5. Finally, Defendant asserts that Plaintiff has failed to state factual allegations sufficient to support his claim under the UPA, and it asks the Court to dismiss this claim. *Id.* at 5–6 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

3

Defendant contends that the UPA applies only to parties that have engaged in the sale or lease of "goods or services." *Id.* at 5. The contract in question, Defendant argues, does not satisfy this requirement, and Plaintiff therefore has not and cannot allege facts sufficient to state a claim under the UPA. *Id.* at 6.

In response, Plaintiff argues that he has met the heightened pleading standard required for special damages. [Doc. 10] at 2–4. Plaintiff further contends that he has made no specific claim based on fraud, and therefore, Defendant's argument with respect to the heightened pleading requirement for allegations of fraud is inapposite. *Id.* at 4. Finally, Plaintiff challenges Defendant's narrow reading of the UPA. *Id.* at 5–6. Plaintiff argues that a party may bring a claim under the UPA as long as the defendant makes a misrepresentation in connection with the sale of goods or services *generally*, not only when there has been a transaction between the plaintiff and the defendant. *Id.* at 6. Plaintiff contends that Defendant's provision of services to the hospitals with which it contracts to provide medical staffing suffices to bring Plaintiff's claims under the umbrella of the UPA. *See id.* In the alternative, if the Court finds the Complaint to be deficient, Plaintiff requests that the Court grant him leave to amend it. *Id.* at 6–7.

### Motions to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 570).  The factual allegations in the complaint "'must be enough to raise a right to relief above the speculative level.'"  *Christy Sports, L.L.C. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although a court must accept as true all of the allegations in a complaint, deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## Analysis

The Court will address the arguments raised in the motion in order of analytical convenience.  First, Defendant's motion will be denied with respect to the breach-of-contract claim.  Plaintiff has stated a claim for punitive damages for breach of contract with sufficient specificity, and his breach-of-contract claim does not require Plaintiff to allege fraudulent conduct.  Next, Defendant's motion will be granted with respect to the claims based on quantum meruit and unjust enrichment.  Plaintiff cannot state a claim for quantum meruit and unjust enrichment where the dispute is governed by a contract.  Finally, Defendant's motion will be granted as to the UPA claim.  Plaintiff does not have standing to sue under the UPA because Plaintiff is neither a consumer of Defendant's goods or services nor a competitor of Defendant suing to protect its consumers.  Nor has Plaintiff asserted that Defendant made a knowing misrepresentation beyond the mere failure to fulfill its contractual obligations.

**Plaintiff has stated a claim for punitive damages with sufficient specificity.**

Plaintiff alleges that Defendant breached the contract by causing Plaintiff to miss scheduled shifts at the hospital; by terminating the contract after Plaintiff declined to perform an unscheduled shift he was not physically able to perform; and by refusing to pay Plaintiff for his services.  [Doc. 1-1] at 5.  Defendant does not contend that Plaintiff has failed state a claim for breach of contract.  However, Plaintiff also seeks punitive damages based on the breach-of-contract claim.  *Id.* at 6, 7.  Defendant argues that punitive damages are special damages under Federal Rule of Civil Procedure 9(g), which provides that, "[i]f an item of special damage is claimed, it must be specifically stated."  *See* [Doc. 5] at 3–4.  Defendant argues that Plaintiff has failed to meet this heightened pleading requirement.  *Id.*  Defendant further argues that Plaintiff has failed to meet the heightened pleading requirement for fraud under Rule 9(b), which provides that a party alleging fraud "must state with particularity the circumstances constituting fraud."  *See* [Doc. 5] at 4.

While Plaintiff concedes that special damages must be specifically stated, he disputes that punitive damages are special damages within the meaning of Rule 9(g).  [Doc. 10] at 2 (citing *Tanner v. Barber* (*In re Barber*), 326 B.R. 463, 466 n.7 (B.A.P. 10th Cir. 2005)).  Indeed, some courts in the Tenth Circuit have questioned whether punitive damages are a class of special damages, with at least one court stating outright that they are not.  *See Two Old Hippies, L.L.C. v. Catch the Bus, L.L.C.*, 784 F. Supp. 2d 1200, 1214 n.3 (D.N.M. 2011) ("Rule 9(g) does not mention punitive damages, nor does it define the 'special damages' for which special pleading is required." (internal quotation marks omitted)); *Dowdy v. Coleman Co.*, 2011 WL 6151432, at *5

(D. Utah Dec. 12, 2011) (unpublished) ("Rule 9(g), however, specifically states that it applies to special damages, not punitive damages.  Special damages are not akin to punitive damages and are based on entirely different public policy considerations."); *see also Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1295 (10th Cir. 2002) ("[Plaintiff] sought special damages in excess of $100 million *as well as* punitive damages." (emphasis added)).  However, the Court need not decide whether punitive damages are special damages, because it finds that Plaintiff has satisfied the heightened pleading requirement of Rule 9(g).

New Mexico permits a party to recover punitive damages on a breach-of-contract claim where the defendant's conduct was "malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."[1]  *Romero v. Mervyn's*, 1989-NMSC-081, ¶ 23, 109 N.M. 249; *see also* UJI 13-861 NMRA (jury instruction providing for punitive damages for "[malicious], [reckless], [wanton], [oppressive], or [fraudulent]" conduct).  Each of the terms listed, standing alone, is sufficient to support an award of punitive damages.  *Mervyn's*, 1989-NMSC-081, ¶ 24.  "Malice" is "the intentional doing of a wrongful act without just cause or excuse."  *Id.* ¶ 25 (internal quotation marks omitted).  "Reckless" and "wanton" conduct is conduct committed intentionally with "utter indifference to the consequences" or "conscious disregard for" the rights of others.  UJI 13-861.  The Supreme Court of New Mexico has clarified that not every intentional breach of contract will give rise to punitive damages.  *Mervyn's*, 1989-NMSC-081, ¶¶ 26, 28.  The *Mervyn's* standard is designed, rather, to serve the public interest by deterring "wrongful" conduct that "is inconsistent with legitimate business interests,

---

[1] At oral argument, the parties agreed that New Mexico law governs Plaintiff's claims.  Therefore, the Court will apply New Mexico law in conducting the present analysis.

violates community standards of decency, and tends to undermine the stability of expectations essential to contractual relationships." *Id.* ¶¶ 26, 34.

Plaintiff bases his claim for punitive damages on two actions by Defendant. First, he claims Defendant failed to pay him for services he performed at the hospital in December 2015 and January 2016. [Doc. 10] at 2–3; [Doc. 1-1] at 4–5. As evidence of Defendant's purposeful, wrongful conduct, Plaintiff points to the fact that Defendant stopped payment on checks it had already mailed to him. [Doc. 10] at 3. Second, Plaintiff alleges that he completed all the paperwork that Defendant sent him, and yet Defendant still refuses to pay him, purportedly for failing to complete his paperwork. *Id.* The Court finds that these allegations satisfy the heightened pleading standard of Rule 9(g). The Complaint alleges specific conduct—cancelling checks and representing that Plaintiff must complete more paperwork, but not supplying any such paperwork—that, if true, evince purposeful, wrongful conduct by Defendant in the course of breaching the contract. The Complaint also provides specific details regarding this conduct, including as exhibits copies of the checks on which Defendant stopped payment and noting the approximate dates on which Plaintiff completed his paperwork and returned it to Defendant. *See* [Doc. 1-1] at 4–5, 14–15.

Defendant's second argument, that Plaintiff's claim fails to the extent Plaintiff alleges fraudulent conduct, is inapposite and need not be considered further. A party seeking punitive damages for breach of contract need not prove fraud. Fraud is just one of several states of mind set out by New Mexico courts and the Uniform Jury Instructions, any one of which on its own

supports a claim for punitive damages. *See Mervyn's*, 1989-NMSC-081, ¶ 24. Plaintiff need not have met the pleading standard for allegations of fraud under Rule 9(b).

The motion to dismiss Plaintiff's claim for punitive damages for breach of contract will be denied.

### Plaintiff cannot state a claim based on quantum meruit and unjust enrichment because the parties' dispute arises out of their contractual relationship.

Plaintiff seeks compensatory and punitive damages based on quantum meruit and unjust enrichment.[2] [Doc. 1-1] at 6–7. As with Plaintiff's claim for punitive damages based on breach of contract, Defendant argues that Plaintiff has failed to meet the heightened pleading requirements for special damages under Rule 9(g) and fraud under Rule 9(b). [Doc. 5] at 3–4.

Defendant's argument with respect to these counts need not be considered because the counts will be dismissed for a different reason. Tenth Circuit law, interpreting New Mexico case law, establishes that a party cannot assert an unjust enrichment claim against another party where the parties are in privity of contract. *Elliott Indus. Ltd. P'ship v. BP Amer. Prod. Co.*, 407 F.3d 1091, 1116–17 (10th Cir. 2005) (citing *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, 129 N.M. 200). The theory of unjust enrichment has evolved to provide a right to relief where the plaintiff has no alternative right on an enforceable contract. *Id.* at 1117. In other words, unjust enrichment is not available when the claimant may bring an action for breach of contract.

---

[2] Plaintiff asserts quantum meruit and unjust enrichment as two separate counts. [Doc. 1-1] at 6–7. New Mexico courts have treated them as the same claim. *Tom Growney Equip., Inc. v. Ansley*, 1994-NMCA-159, ¶ 6, 119 N.M. 110 ("New Mexico has recognized a theory of quantum meruit distinct from contract. More recently, our Supreme Court characterized the action as a claim for unjust enrichment." (citation omitted)); *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200 ("New Mexico has long recognized actions for unjust enrichment, that is, in quantum meruit or assumpsit."); *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 21, 110 N.M. 173 ("Actions brought upon theories of unjust enrichment, quasi contract, contract implied in law, and quantum meruit are essentially the same." (internal quotation marks omitted)). Therefore, the Court will consider these two counts together.

*See id.*  This limitation applies even if there is no express provision in the contract governing the specific dispute over which a party alleges unjust enrichment; it is enough that the dispute is grounded in the contractual relationship.  *Id.*

There is no question that the parties were in privity of contract.  *See* [Doc. 1-1] at 2.  Nor is there any question that Plaintiff's unjust enrichment and quantum meruit claims are grounded in that contractual relationship.  The facts giving rise to these claims—Defendant's alleged failure to pay Plaintiff for work Plaintiff performed—arise straight out of the contract and are in fact part of Plaintiff's breach-of-contract claim.  *See* [Doc. 1-1] at 5, 6–7.  Plaintiff cannot state a claim based on quantum meruit or unjust enrichment on the facts alleged.  The motion to dismiss will be granted as to Plaintiff's quantum meruit and unjust enrichment claims.

**Plaintiff has failed to state a claim under the UPA.**

The UPA bars "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."  NMSA 1978, § 57-12-3.  The UPA is a consumer protection measure "designed to provide a remedy against misleading identification and false or deceptive advertising."  *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 22, 142 N.M. 437.  New Mexico courts have set out four elements that must be established to invoke the UPA: (1) a false or misleading statement or representation by the defendant; (2) knowingly made in connection with the sale, lease, rental, or loan of goods or services; (3) which occurred in the regular course of the defendant's trade or commerce; and (4) was of the type that may, tends to, or does deceive or mislead any person.  *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97.

Defendant argues that Plaintiff has failed to state a claim under the UPA because the second element—that the misrepresentation be made in connection with the sale of goods or services—cannot be satisfied on Plaintiff's alleged facts.  [Doc. 5] at 5–6.  Defendant contends that the agreement between the parties was not an agreement for the sale or lease of goods or services; therefore, Defendant argues, the alleged misrepresentation was not made in connection with the sale or lease of goods or services.  *Id.*  Plaintiff contends that the UPA is broader in its reach than Defendant would allow.  [Doc. 10] at 5–6.  Plaintiff argues that the UPA is triggered, not only when the defendant makes a misrepresentation to the plaintiff in the course of a transaction between the parties, but also when the defendant makes a misrepresentation in connection with the sale of goods or services *generally*.  *Id.* at 6 (citing *First Nat'l Bancorp, Inc. v. Alley*, 76 F. Supp. 3d 1261, 1264 (D.N.M. 2014)).  Plaintiff asserts that Defendant's provision of services to the hospitals with which it contracts—i.e., staffing hospitals with medical personnel—satisfies the second element of the UPA and brings this case within the statute's ambit.  *See id.*

### Plaintiff does not allege that he is a consumer of Defendant's goods or services or that he otherwise is entitled to bring suit on behalf of consumers.

New Mexico courts interpret the provisions of the UPA liberally in light of the statute's purpose as remedial legislation for aggrieved consumers.  *Maese v. Garrett*, 2014-NMCA-072, ¶ 18, 329 P.3d 713.  The UPA "encompass[es] a broad array of commercial relationships."  *Id.* (internal quotation marks omitted).  It does not require, for example, that the plaintiff purchase goods or services directly from the defendant seller.  *See id.* ¶¶ 18–19 (plaintiff could recover under the UPA where he received securities and financial advice from the defendants, even

though the defendants were compensated by a third party).  Nor does it require that the misrepresentation be made directly to the plaintiff.  *See Lohman*, 2007-NMCA-100, ¶¶ 25–26 (permitting a UPA claim by consumers against a defendant who made misrepresentations to a third party, with whom the defendant was conducting business, "for the purpose of facilitating sales of a product to consumers at large").  The scope of the UPA is "arguably[] broad enough to encompass misrepresentations which bear on downstream sales by and between third parties." *Id.* ¶ 30.

The UPA is not, however, boundless in its application.  The New Mexico Court of Appeals has held that only consumers, not sellers, may bring suit against defendants whose goods or services the plaintiff consumed.  *See Hicks v. Eller*, 2012-NMCA-061, ¶ 20, 280 P.3d 304 ("[T]he UPA gives standing only to buyers of goods and services.") (citing *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 17, 137 N.M. 524); *Maese*, 2014-NMCA-072, ¶ 19 ("[T]he UPA merely contemplates a plaintiff who seeks or acquires goods or services *and* a defendant who provides goods or services." (internal quotation marks omitted)).  While the plaintiff need not have "purchase[d] the product from the defendant," "somewhere along the purchasing chain, the claimant [must have] purchase[d] an item that was at some point sold by the defendant."  *Hicks*, 2012-NMCA-061, ¶ 20.  This District, relying on New Mexico case law, has said the same.  *Guidance Endodontics, L.L.C. v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1256 (D.N.M. 2010) ("[A] UPA claim may only be based on unfair practices in connection with the sale of goods or services—thus[,] . . . it must be brought by a purchaser, not a seller.").  The court in *Guidance Endodontics* found that "the very

12

nature of the legislation at issue, to protect consumers, implies that only a consumer should be able to take advantage of its protections." *Id.*

Plaintiff does not allege that *his* relationship with Defendant satisfies the buyer-seller framework that New Mexico courts require. *See* [Doc. 10] at 5–6. In other words, he does not allege that he is a consumer of goods or services that were at any point sold by Defendant.[3] Instead, he alleges that the commercial relationship that brings this case under the UPA is that between Defendant and the hospitals it staffs. *Id.* at 6. Plaintiff urges the Court to extend to this case the reasoning of another recent decision from this District, *First National Bancorp, Inc. v. Alley*, 76 F. Supp. 3d 1261 (D.N.M. 2014). There, the court held that a business had standing to sue a competitor business under the UPA where the defendant was allegedly misleading its (and the plaintiff's would-be) customers, ultimately harming the plaintiff's business. *Id.* at 1263–64. The court in that case held that the plaintiff could bring a claim under the UPA even though it was not a consumer and had not purchased goods or services from the defendant. *Id.* at 1264.

While recognizing that other courts in this District have reached the opposite conclusion regarding competitor standing, the court in *First National Bancorp* nevertheless concluded that its seeming expansion of the UPA did not conflict with New Mexico case law limiting UPA standing to consumers. *Id.* at 1263, 1266 n.5. New Mexico courts, the court found, have evaluated whether a *seller* of goods or services can bring a UPA claim against a *buyer*. *Id.*

---

[3] Though Plaintiff did not do so, he might have posited himself as a consumer of Defendant's services—that is, as a consumer of Defendant's staffing service connecting physicians with hospitals. Plaintiff might have argued that his relationship with Defendant was exactly the type that gives rise to a UPA claim. He does not raise this argument, however, and the Court declines to make it on his behalf. The Court's holding on Plaintiff's UPA claim does not, therefore, foreclose the possibility that a similarly situated plaintiff could state a claim under the UPA by asserting that the relationship between a person seeking employment and a staffing service is a consumer relationship.

at 1265–66.  That question, the court held, is analytically distinct from the question of whether a business can bring a UPA claim against a competitor, which no New Mexico court has directly decided.  *Id.*  The court further cited dicta in one opinion from the New Mexico Court of Appeals suggesting that competitor standing is permissible under the UPA in certain circumstances, namely when the plaintiff's UPA claim is based on deceptive advertising.  *Id.* at 1266 (citing *Page & Wirtz Constr. Co. v. Solomon*, 1990-NMSC-063, 110 N.M. 206).  Based on its findings that competitor standing presented a novel question, and that allowing a claim based on competitor standing—at least on the specific facts of the case—would be consistent with the UPA's purpose as a remedial statute designed to protect consumers, the court allowed the claim to proceed.  *Id.*

The circumstances in this case are fundamentally different from those in *First National Bancorp*, i.e., where a plaintiff was harmed by a competitor's deceptive advertising practices targeting third-party consumers.  A ruling in Plaintiff's favor would require the Court to stretch the UPA even further than the court in *First National Bancorp*.  It would require the Court to find that the UPA accommodates a claim by a non-consumer plaintiff to whom the defendant made a misrepresentation in connection with providing goods and services to a third-party consumer.  The Court declines Plaintiff's invitation to make new law.  The UPA is designed to protect consumers and provide a remedy for the unfair practices of sellers.  The facts of this case fall outside the scope of the UPA as contemplated by the New Mexico courts and even as extended by this District in *First National Bancorp*.  The Court is unwilling to strain it any further.

14

<u>Plaintiff does not allege that Defendant made a knowing misrepresentation
under the UPA beyond mere failure to fulfill its contractual obligations.</u>

Plaintiff's claim for violation of the UPA fails for an additional reason.  To state a claim under the UPA, a party must do more than assert a breach of contract.  A UPA claim "is more like a tort claim than a contract claim."  *Carl Kelley Constr. L.L.C. v. Danco Techs.*, 656 F. Supp. 2d 1323, 1339 (D.N.M. 2009).  Although conduct giving rise to a breach-of-contract claim can be relevant to a UPA claim, the latter is not "a suit on the contract but a suit under a cause of action that New Mexico's legislature has enacted for allegedly unfair trade practices."  *Id.*

"The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made *knowingly in connection with* the sale or goods or services."  *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748 (emphasis added).  The mere failure to uphold a contractual obligation, therefore, cannot itself serve as the misrepresentation that brings a claim under the UPA.  *Stevenson*, 1991-NMSC-051, ¶ 11.  Otherwise, if mere failure to perform were sufficient, "every breach of contract case [would be] a violation of the [UPA]."  *Id.* A party's "subsequent failure to fulfill" a contract cannot serve as the basis for a UPA claim "absent evidence of knowing misrepresentations made at [the] time" the parties entered into the contract.  *Nanodetex Corp. v. Sandia Corp.*, 2007 WL 4356154, at *5 (D.N.M. July 26, 2007) (unpublished) (citing *Stevenson*, 1991-NMSC-051).  Indeed, the UPA targets "conduct involving either misleading identification of business or goods or false or deceptive advertising" because such trade practices are likely to induce a person into taking some action against his or her pecuniary interest.  *Stevenson*, 1991-NMSC-051, ¶ 12.

15

Plaintiff's allegations, if true, would prove nothing more than Defendant's failure to uphold its contractual obligations. Plaintiff alleges that Defendant misrepresented to Plaintiff that (1) it would pay Plaintiff for services he performed at the hospital, and (2) Plaintiff had outstanding paperwork to complete before Defendant would pay him. *See* [Doc. 1-1] at 4–5. These "misrepresentations" correspond directly to provisions of the parties' contract. *See id.* at 9 (contract provision setting out compensation plan and providing that, if Plaintiff fails to complete paperwork in connection with the services he provides, Defendant may "deduct the amount equal to unbilled patient charges from [Plaintiff's] compensation" but must pay the withheld amount "[i]f paperwork is completed in a timely manner"). Plaintiff does not contend that Defendant knowingly misrepresented, at the time the parties entered into the agreement, that it would fulfill its payment obligations. Plaintiff therefore has failed to allege that Defendant made any misrepresentation "knowingly in connection with" the sale of goods or services.

To be sure, the UPA is not limited to misrepresentations that occur at the time the parties enter into a contract. *See Maese*, 2014-NMCA-072, ¶ 18 (noting the breadth of the requirement that the misrepresentation be made "in connection with" the sale of goods or services). Plaintiff does allege that Defendant "continues falsely to represent that [Plaintiff] has failed to complete paperwork" and is withholding payment based on that misrepresentation. [Doc. 1-1] at 5. Such statements by Defendant, however, are not fresh misrepresentations of the type that could deceive or mislead Plaintiff, as contemplated by the UPA. Rather, if true, the statements amount to Defendant's ongoing, intentional breach of its obligation to pay Plaintiff according to the terms of the contract.

16

Plaintiff has failed to allege facts stating a claim under the UPA, and Defendant's motion to dismiss will be granted.

### Plaintiff's claims as to quantum meruit, unjust enrichment, and the UPA will be dismissed with prejudice.

Although, in general, leave to amend a complaint should be given freely, a court may deny leave to amend where amendment would be futile. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Amendment is futile if the amended complaint would be subject to dismissal. *Id.*

Plaintiff's claims based on quantum meruit and unjust enrichment are subject to dismissal because the parties' dispute arises out of a contract, and quantum meruit and unjust enrichment are available as theories of recovery only where there is no contractual relationship between the parties. Thus, even if pleaded with more particularity in an amended complaint, these claims still would be subject to dismissal. Therefore, amendment would be futile, and the claims will be dismissed with prejudice.

Plaintiff's UPA claim will also be dismissed with prejudice. As noted above, a party's ultimate failure to perform its obligations under a contract does not create a "misrepresentation" under the UPA. Plaintiff does not contend that Defendant employed deceptive trade practices to induce Plaintiff into taking some action against his pecuniary interests. Rather, the misrepresentation Plaintiff identifies is simply that Defendant would perform its obligations under the contract. Leave to amend would be futile because no additional facts could establish that the misrepresentations Plaintiff alleges occurred outside the realm of breach of contract. Plaintiff's claim under the UPA will be dismissed with prejudice.

17

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Dismiss [Doc. 5] is **GRANTED IN PART** and **DENIED IN PART**.   It is **GRANTED** as to Plaintiff's quantum meruit, unjust enrichment, and UPA claims, which are dismissed with prejudice.  It is **DENIED** as to Plaintiff's claim for breach of contract.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

18